IndyMac MBS 2006-AR33
INDX 2006-AR33

INDEMNIFICATION
AND
CONTRIBUTION AGREEMENT

AGREEMENT, dated November 28, 2006 (this "Agreement"), among IndyMac MBS, Inc., a Delaware corporation ("IndyMac MBS"), the Seller (as defined below) and the Broker-Dealers (as defined below).

WITNESSETH:

WHEREAS, IndyMac MBS and one or more of the Broker-Dealers are parties to the Underwriting Agreement (defined below), providing for the sale by IndyMac MBS and the purchase, severally and not jointly, by such Broker-Dealers of the Public Certificates (defined below); and

WHEREAS, IndyMac MBS and one or more of the Broker-Dealers are parties to the Purchase Agreement (defined below), providing for the sale by IndyMac MBS and the purchase, severally and not jointly, by such Broker-Dealers of the Private Certificates (defined below) other than the Retained Certificates; and

WHEREAS, as an inducement to the Broker-Dealers to enter into the Underwriting Agreement and the Purchase Agreement, as applicable, IndyMac MBS and the Broker-Dealers wish to provide for indemnification and contribution on the terms and conditions hereinafter set forth; and

WHEREAS, the purchase price to be paid by IndyMac MBS to the Seller for the Mortgage Loans will be the proceeds of the sale by IndyMac MBS to the Broker-Dealers of the Public Certificates, and the Private Certificates other than the Retained Certificates, and as an inducement to the Broker-Dealers to enter into the Underwriting Agreement and Purchase Agreement, as applicable, the Seller agrees to perform certain obligations set forth herein;

NOW, THEREFORE, in consideration of the foregoing and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

# ARTICLE I

Definitions

1.1    <u>Certain Defined Terms</u>.

The following terms shall have the meanings set forth below, unless the context clearly indicates otherwise:

<u>ABS ICM</u>:  A Free Writing Prospectus that consists of information contemplated by the definition of ABS informational and computational materials in Item 1101(a) of Regulation AB under the Act.

<u>Act</u>:  The Securities Act of 1933, as amended.

<u>Agreement</u>:  This Indemnification and Contribution Agreement, as the same may be amended in accordance with the terms hereof.

<u>Base Prospectus</u>:  The prospectus dated October 26, 2006, as the same may be amended or supplemented, of IndyMac MBS relating to the offering from time to time of one or more series of mortgage pass-through certificates.

<u>Broker-Dealer</u>:  Each of the signatories to this Agreement other than IndyMac MBS or the Seller.

<u>Certificates</u>:  Mortgage Pass-Through Certificates, Series 2006-AR33 of IndyMac MBS.

<u>Closing Date</u>:  On or about November 29, 2006.

<u>Collateral Strats</u>:  Information regarding the Mortgage Loans that is based on the Seller Mortgage Loan Information.

<u>Computational Materials</u>:  A Free Writing Prospectus containing only information of the type specified in paragraph (5) of the definition of ABS ICM; provided, however, that Computational Materials do not include any misstatement or omission or alleged misstatement or omission that results from a Pool Error.

Contract of Sale: Has the meaning set forth in Rule 159 under the Act.

Derived Information: As to any Broker-Dealer, such information, if any, in the Series Term Sheets, Collateral Term Sheets, Structural Term Sheets and/or Computational Materials that is not contained in (i) the Prospectus, the Registration Statement, the Memorandum or amendments or supplements to either, taking into account information incorporated therein by reference (other than information incorporated by reference from the Series Term Sheets, Collateral Term Sheets, Structural Term Sheets and/or Computational Materials) or (ii) any Seller Mortgage Loan Information; provided, however, that Derived Information shall not include any error or omission or alleged error or alleged omission that results from a Pool Error.

Disclosure Package: The Issuer Free Writing Prospectus and the Base Prospectus collectively.

Exchange Act: The Securities Exchange Act of 1934, as amended.

Form 8-K: Any of the Current Reports on Form 8-K filed by or on behalf of IndyMac MBS with respect to the Mortgage Loans.

Free Writing Prospectus: The meaning set forth in Rules 405 and 433 under the Act.

IndyMac MBS: IndyMac MBS, Inc., a Delaware corporation and its successors in interest.

IndyMac MBS Memorandum Information: All information contained or incorporated in the Memorandum other than the Purchaser Information.

IndyMac MBS Prospectus Information: All information contained or incorporated in the Prospectus other than the Senior Underwriter Information, the Subordinate Underwriter Information and the PO Underwriter Information.

IndyMac MBS Registration Information: All information contained or incorporated in the Registration Statement.

Issuer Free Writing Prospectus: The Free Writing Prospectus of IndyMac MBS dated [_____], 2006 and relating to the Base Prospectus.

106610v.3

<u>Memorandum</u>:  The Confidential Private Placement Memorandum, if any, dated the Closing Date, as the same may be amended or supplemented, of IndyMac MBS relating to the Private Certificates.

<u>Offered Certificates</u>:  The Public Certificates and Private Certificates.

<u>Pool Error</u>:  Any error in the Seller Mortgage Loan Information.

<u>PO Spread</u>:  The excess, if any, of (i) the purchase prices paid by investors to the PO Underwriter for the Class PO Certificates over (ii) the purchase price paid by the PO Underwriter to IndyMac MBS for the Class PO Certificates pursuant to the Underwriting Agreement.

<u>PO Underwriter</u>:  The Broker-Dealer, if any, which is purchasing the Class PO Certificates, if any, pursuant to the Underwriting Agreement.

<u>PO Underwriter Information</u>:  The following information is the only written information furnished by or on behalf of the PO Underwriter to IndyMac MBS specifically for use in connection with the preparation of the Registration Statement or the Prospectus, such information being (i) the information relating to the PO Underwriter set forth in the Prospectus Supplement under the caption "Method of Distribution" therein; and (ii) any Computational Materials prepared by the PO Underwriter.

<u>Preliminary Term Sheet</u>:  A Free Writing Prospectus that describes the Certificates and/or the Mortgage Loans and contains information of the type described in Item 1101(a) (1) – (3) of Regulation AB under the Act but excluding any Computational Materials.

<u>Private Certificates</u>:  The Class I-B-4, Class I-B-5, Class I-B-6, Class II-B-4, Class II-B-5 and Class II-B-6 Certificates.

<u>Prospectus</u>:  The Base Prospectus together with the Prospectus Supplement.

<u>Prospectus Supplement</u>:  The Prospectus Supplement dated the date hereof, as the same may be amended or supplemented, of IndyMac MBS relating to the offering of the Public Certificates.

<u>Public Certificates</u>:  The Senior Certificates and Subordinate Certificates.

-4

Purchase Agreement:  The Purchase Agreement, if any, dated the Closing Date, between IndyMac MBS and the Purchaser providing for the purchase and sale of the Private Certificates, other than the Retained Certificates that are Private Certificates.

Purchase Spread:  The excess, if any, of (i) the purchase prices paid by investors to the Purchaser for the Private Certificates other than the Retained Certificates over (ii) the purchase price paid by the Purchaser to IndyMac MBS for the Private Certificates other than the Retained Certificates pursuant to the Purchase Agreement.

Purchaser:  The Broker-Dealer that is purchasing the Private Certificates other than the Retained Certificates pursuant to the Purchase Agreement.

Purchaser Information:  The only written information furnished by or on behalf of the Purchaser to IndyMac MBS specifically for use in connection with the preparation of the Memorandum, such information being the information relating to the Purchaser set forth in the Memorandum under the caption "Method of Placement."

Registration Statement:  As defined in the Underwriting Agreement.

Retained Certificates: None.

Rules and Regulations:   The rules and regulations of the Commission promulgated under the Act.

Seller:   IndyMac Bank, F.S.B., a federal savings bank, and its successors in interest.

Seller Mortgage Loan Information:  Information relating to the Mortgage Loans furnished by or on behalf of the Seller to any Broker-Dealer.

Senior Certificates:  The Class 1-A-1, Class 1-A-2-1, Class 1-A-2-2, Class 2-A-1-1, Class 2-A-1-2, Class 2-A-2-1, Class 2-A-2-X, Class 3-A-1, Class 3-A-2, Class 4-A-1, Class 4-A-2, Class 4-A-X and Class A-R Certificates.

Senior Spread:  The excess, if any, of (i) the purchase prices paid by investors to the Senior Underwriter for the Senior Certificates, other than the Retained Certificates that are Senior Certificates, if any, over (ii) the purchase price paid by the Senior Underwriter to IndyMac MBS for such Senior Certificates pursuant to the Underwriting Agreement.

106610v.3

Senior Structure:   Information contained in a Preliminary Term Sheet or ABS ICM specifying the classes paydown rules and characteristics of the Senior Certificates.

Senior Underwriter:   The Broker-Dealer which is purchasing the Senior Certificates, other than the Retained Certificates that are Senior Certificates, pursuant to the Underwriting Agreement.

Senior Underwriter Information:   The following information is the only written information furnished by or on behalf of the Senior Underwriter to IndyMac MBS specifically for use in connection with the preparation of the Registration Statement or the Prospectus, such information being (i) the information relating to the Senior Underwriter set forth in the Prospectus Supplement under the caption  "Method of Distribution" therein; and (ii) any Computational Materials prepared by such Senior Underwriter.

Subordinate Certificates:  The Class I-B-1, Class I-B-2, Class I-B-3, Class II-B-1, Class II-B-2 and Class II-B-3 Certificates.

Subordinate Spread:   The excess, if any, of (i) the purchase prices paid by investors to the Subordinate Underwriter for the Subordinate Certificates, over (ii) the purchase price paid by the Subordinate Underwriter to IndyMac MBS for such Subordinate Certificates pursuant to the Underwriting Agreement.

Subordinate Underwriter:   The Broker-Dealer, if any, which is purchasing the Subordinate Certificates, if any, pursuant to the Underwriting Agreement.

Subordinate Underwriter Information:   The following information is the only written information furnished by or on behalf of the Subordinate Underwriter to IndyMac MBS specifically for use in connection with the preparation of the Registration Statement or the Prospectus, such information being (i) the information relating to the Subordinate Underwriter set forth in the Prospectus Supplement under the caption "Method of Distribution" therein; and (ii) any Computational Materials prepared by such Subordinate Underwriter.

Underwriting Agreement:  The Underwriting Agreement, dated the date hereof, among IndyMac MBS, the Senior Underwriter, the PO Underwriter and the Subordinate Underwriter providing for the purchase and sale of the Public Certificates, other than the Retained Certificates that are Public Certificates.

Written Communication:  The meaning set forth in Rule 405 under the Act.

1.2     <u>Other Terms</u>.

Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Underwriting Agreement or the Purchase Agreement, as applicable.

1.3     <u>Interpretive Principle</u>.

A Broker-Dealer may be acting in more than one capacity, <u>e.g.</u>, the Senior Underwriter also may be the PO Underwriter.  References herein to a Broker-Dealer acting in a particular capacity shall refer to such Broker-Dealer in such capacity only and shall not refer to other capacities, if any, being served by such Broker-Dealer.

## ARTICLE II

Representations and Warranties

2.1     <u>Mutual Representation</u>.

Each party hereto represents to the other parties hereto that:

(a)     the execution, performance and delivery of this Agreement has been duly authorized by such party;

(b)     this Agreement has been duly executed and delivered by such party; and

(c)     this Agreement constitutes the legal and valid obligations of such party.

2.2     <u>Other Representations</u>.

(a)     IndyMac MBS has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement; and

(b)     The Seller has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement.

(c)     In relation to each Member State of the European Economic Area that has implemented the Prospectus Directive (each, a "Relevant Member State"), each Broker-Dealer

represents and agrees with the Depositor that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the "Relevant Implementation Date") and with respect to any Class of Certificates with a minimum denomination of less than $100,000 that is purchased by such Broker-Dealer it has not made and will not make an offer of Certificates of that Class to the public in that Relevant Member State prior to the publication of a prospectus in relation to the Certificates of that Class which has been approved by the competent authority in that Relevant Member State or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive, except that it may, with effect from and including the Relevant Implementation Date, make an offer of Certificates of that Class to the public in that Relevant Member State at any time:

    (i)    to legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

    (ii)    to any legal entity which has two or more of (1) an average of at least 250 employees during the last fiscal year; (2) total assets of more than €43,000,000 and (3) an annual net revenue of more than €50,000,000, as shown in its last annual or consolidated financial statements; or

    (iii)    in any other circumstances that do not require the publication by the Depositor of a prospectus pursuant to Article 3 of the Prospectus Directive.

For the purposes of this provision, the expression an "offer of Certificates of that Class to the public" in relation to any Class of Certificates, which Class has a minimum denomination of less than $100,000, in any Relevant Member State means the communication in any form and by any means of sufficient information on the terms of the offer and the Certificates to be offered so as to enable an investor to decide to purchase or subscribe the Certificates of that Class, as the same may be varied in that Member State by any measure implementing the Prospectus Directive in that Member State, and the expression "Prospectus Directive" means Directive 2003/71/EC and includes any relevant implementing measure in each Relevant Member State.

2.3    <u>Marketing</u>.

(a)    Each Underwriter represents to and agrees with IndyMac MBS as follows:

    (i)    Prior to entering into any Contract of Sale, the Underwriter shall convey the Disclosure Package to each prospective investor.  The Underwriter shall keep

-8-

sufficient records to document its conveyance of the Disclosure Package to each potential investor prior to the related Contract of Sale.

(ii)   An Underwriter may convey ABS ICM or a Preliminary Term Sheet to a potential investor prior to entering into a Contract of Sale with such investor; provided, however, that such Underwriter shall not enter into a Contract of Sale with such investor unless the Underwriter has complied with paragraph (i) above prior to such Contract of Sale.  In addition, if such ABS ICM or Preliminary Term Sheet consists of a narrative description of the paydown rules and other information regarding the transaction of the type typically used prior to December 1, 2005 for similar transactions (a "Traditional Term Sheet"), such Underwriter (x) shall deliver a copy of the proposed Traditional Term Sheet to IndyMac MBS and its counsel at least one business day prior to the anticipated first use; (y) shall not convey any such Traditional Term Sheet to which IndyMac MBS or its counsel reasonably objects and (z) shall convey such Traditional Term Sheet to each potential investor in the class or classes of Public Certificates to which such Traditional Term Sheet relates.

(iii)   An Underwriter may convey Computational Materials (x) to a potential investor prior to entering into a Contract of Sale with such investor; provided, however, that such Underwriter shall not enter into a Contract of Sale with such investor unless the Underwriter has complied with paragraph (i) above prior to such Contract of Sale and such Computational Materials shall be conveyed separate and apart from any Preliminary Term Sheet and (y) to an investor after a Contract of Sale provided that the Underwriter has complied with paragraph (i) above in connection with such Contract of Sale.  The Underwriter shall keep sufficient records of any conveyance of Computational Materials to potential or actual investors and shall maintain such records as required by the Rules and Regulations.

(iv)   If an Underwriter conveys ABS ICM or a Preliminary Term Sheet it shall deliver a copy thereof to counsel for IndyMac MBS at the time of first use in such format as such counsel may reasonably request, and such counsel shall file the same in accordance with Rule 433(d)(6)(i).

(v)   Each ABS ICM or Preliminary Term Sheet shall contain legends that are substantially similar to the following:

The information in this free writing prospectus is preliminary. This free writing prospectus is being delivered to you solely to provide you with information about the offering of the securities referred to in this free writing prospectus and to solicit an offer to purchase the securities, when, as and if issued. Any such offer to purchase made by you will not be accepted and will not constitute a contractual commitment by you to purchase any of the securities until we have accepted your offer to purchase. You may

-9-

withdraw your offer to purchase securities at any time prior to our acceptance of your offer.

The asset-backed securities referred to in this free writing prospectus are being offered when, as and if issued. In particular, you are advised that asset-backed securities, and the asset pools backing them, are subject to modification or revision (including, among other things, the possibility that one or more classes of securities may be split, combined or eliminated), at any time prior to issuance or availability of a final prospectus. As a result, you may commit to purchase securities that have characteristics that change, and you are advised that all or a portion of the securities may not be issued that have the characteristics described in this free writing prospectus. Any obligation on our part to sell securities to you will be conditioned on the securities having the characteristics described in this free writing prospectus. If that condition is not satisfied, we will notify you, and neither the depositor nor the underwriter will have any obligation to you to deliver all or any portion of the securities which you have committed to purchase, and there will be no liability between us as a consequence of the non-delivery.

THE DEPOSITOR HAS FILED A REGISTRATION STATEMENT (INCLUDING A PROSPECTUS) WITH THE SEC FOR THE OFFERING TO WHICH THIS COMMUNICATION RELATES. BEFORE YOU INVEST, YOU SHOULD READ THE PROSPECTUS IN THAT REGISTRATION STATEMENT AND OTHER DOCUMENTS THE DEPOSITOR HAS FILED WITH THE SEC FOR MORE COMPLETE INFORMATION ABOUT THE DEPOSITOR AND THIS OFFERING. YOU MAY GET THESE DOCUMENTS AT NO CHARGE BY VISITING EDGAR ON THE SEC WEB SITE AT *WWW.SEC.GOV*. ALTERNATIVELY, THE DEPOSITOR, ANY UNDERWRITER OR ANY DEALER PARTICIPATING IN THE OFFERING WILL ARRANGE TO SEND YOU THE PROSPECTUS AT NO CHARGE IF YOU REQUEST IT BY CALLING TOLL-FREE 1-8[ZZ-ZZZ-ZZZZ].

This free writing prospectus does not contain all information that is required to be included in the base prospectus and the prospectus supplement.

The information in this free writing prospectus is preliminary and is subject to completion or change.

The information in this free writing prospectus, if conveyed prior to the time of your commitment to purchase, supersedes any similar prior information contained in any prior free writing prospectus relating to these securities.

Please click here for a copy of the base prospectus applicable to this offering. [insert link direct to base as posted on a website, or link to an embedded pdf copy of the base prospectus]

The information in this free writing prospectus may be based on preliminary assumptions about the pool assets and the structure. Any such assumptions are subject to change.

The information in this free writing prospectus may reflect parameters, metrics or scenarios specifically requested by you. If so, prior to the time of your commitment to purchase, you should request updated information based on any parameters, metrics or scenarios specifically required by you.

Neither the depositor of the securities nor any of its affiliates prepared, provided, approved or verified any statistical or numerical information presented in this free writing prospectus, although that information may be based in part on loan level data provided by the depositor or its affiliates.

(vi)    Unless preceded or accompanied by a prospectus satisfying the requirements of Section 10(a) of the Act, an Underwriter shall not convey or deliver any Written Communication to any person in connection with the initial offering of any Public Certificate, unless such Written Communication either (a) is made in reliance on Rule 134 under the Act, (b) constitutes a prospectus satisfying the requirements of Rule 430B under the Act that has been prepared by IndyMac MBS, (c) is the Final Free Writing Prospectus or (d) is permitted by Section 2.3(a)(i), (ii) or (iii), subject to compliance with Section 2.3(a)(iv)(v) and (vi).

(b)    IndyMac MBS represents to and agrees with each Underwriter as follows:

1.    IndyMac MBS shall file any ABS ICM or Preliminary Term Sheets delivered to its counsel as provided in 2.3(a)(iv) above as and when required by the Rules and Regulations.

2.    IndyMac MBS shall not convey any free writing prospectus or other issuing entity information other than the Disclosure Package prior to the availability of the Prospectus Supplement unless it shall have first delivered it to the Underwriters for their review.

(c)    In conjunction with the preparation of the Prospectus Supplement for printing and distribution, IndyMac MBS and the Underwriters shall prepare the Final Free Writing Prospectus which will consist of excerpts from the Prospectus Supplement.  IndyMac MBS shall file the Final Free Writing Prospectus at the time of filing of the Prospectus Supplement.

## ARTICLE III

Indemnification

3.1   <u>Indemnification</u>.

(a)      IndyMac MBS agrees to indemnify and hold harmless each Broker-Dealer and each person who controls a Broker-Dealer within the meaning of either the Act or the Exchange Act against any and all losses, claims, damages or liabilities, joint or several, to which they may become subject under the Act, the Exchange Act, or other federal or state statutory law or regulation, at common law or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of a material fact contained in the IndyMac MBS Memorandum Information, the IndyMac MBS Prospectus Information, the IndyMac MBS Registration Information, the Disclosure Package or the Collateral Strats or in any revision or amendment thereof or supplement thereto or arise out of or are based upon the omission or alleged omission to state in the IndyMac MBS Memorandum Information, the IndyMac MBS Prospectus Information or the IndyMac MBS Registration Information or in any revision or amendment thereof or supplement thereto a material fact required to be stated therein or the omission or alleged omission to state a material fact in the IndyMac MBS Memorandum Information, the IndyMac MBS Prospectus Information, the IndyMac MBS Registration Information, the Disclosure Package or the Collateral Strats or in any revision or amendment thereof or supplement thereto necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, and agrees to reimburse each such indemnified party for any legal or other expenses reasonably incurred by it or him in connection with investigating or defending any such loss, claim, damage, liability or action; <u>provided</u>, <u>however</u>, that IndyMac MBS shall not be liable to a particular Broker-Dealer or any person who controls such Broker-Dealer to the extent that any misstatement or alleged misstatement or omission or alleged omission was made in reliance upon and in conformity with the Senior Underwriter Information, the PO Underwriter Information, the Subordinate Underwriter Information or the Purchaser Information, as applicable.  This indemnity agreement will be in addition to any liability which IndyMac MBS may otherwise have.

(b)      Each Broker-Dealer severally agrees to indemnify and hold harmless IndyMac MBS, its officers who signed the Registration Statement or any amendment thereof, its directors, and each person who controls IndyMac MBS within the meaning of either the Act or the Exchange Act, to the same extent as the foregoing indemnities from IndyMac MBS to each Broker-Dealer; <u>provided</u>, <u>however</u>, that a Broker-Dealer will be liable in any such case only to the extent that such untrue statement or alleged untrue statement or omission or alleged omission was made in reliance upon and in conformity with (i) the Senior Underwriter Information, in the case of the Senior Underwriter, (ii) the PO Underwriter Information, in the case of the  PO Underwriter, (iii) the Subordinate Underwriter Information, in the case of the Subordinate Underwriter and (iv) the Purchaser Information, in the case of the Purchaser.  This indemnity agreement will be in addition to any liability which any Broker-Dealer may otherwise have.

106610v.3

(c)     The Senior Underwriter agrees to indemnify and hold harmless IndyMac MBS, its officers who signed the Registration Statement or any amendment thereof, its directors, and each person who controls IndyMac MBS within the meaning of either the Act or the Exchange Act against any and all losses, claims, damages or liabilities, joint or several, to which they may become subject under the Act, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of a material fact contained in the Senior Structure included in ABS ICM or a Preliminary Term Sheet conveyed by such Senior Underwriter prior to the applicable Contract of Sale.

(d)     Each Underwriter severally agrees to indemnify and hold harmless IndyMac MBS, its officers who signed the Registration Statement or any amendment thereof, its directors, and each person who controls IndyMac MBS within the meaning of either the Act or the Exchange Act against any and all losses, claims, damages or liabilities, joint or several, to which they may become subject under the Act, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of such Underwriter's failure to comply with Section 2.3(a)(i).

(e)     Promptly after receipt by an indemnified party under this Section 3.1 of notice of the commencement of any action, such indemnified party shall, if a claim in respect thereof is to be made against the indemnifying party under this Section 3.1, notify the indemnifying party in writing of the commencement thereof; but the omission so to notify the indemnifying party will not relieve the indemnifying party from any liability which it may have to any indemnified party otherwise than under this Section 3.1.  In case any such action is brought against any indemnified party and it notifies the indemnifying party of the commencement thereof, the indemnifying party shall be entitled to participate therein, and to the extent that it may elect by written notice delivered to the indemnified party promptly after receiving the aforesaid notice from such indemnified party, to assume the defense thereof, with counsel satisfactory to such indemnified party; provided, however, that if the defendants in any such action include both the indemnified party and the indemnifying party and the indemnified party or parties shall have reasonably concluded that there may be legal defenses available to it or them and/or other indemnified parties that are different from or additional to those available to the indemnifying party, the indemnified party or parties shall have the right to elect separate counsel to assert such legal defenses and to otherwise participate in the defense of such action on behalf of such indemnified party or parties.  Upon receipt of notice from the indemnifying party to such indemnified party of its election so to assume the defense of such action and approval by the indemnified party of counsel, the indemnifying party will not be liable for any legal or other expenses subsequently incurred by such indemnified party in connection with the defense thereof, unless (i) the indemnified party shall have employed separate counsel in connection with the assertion of legal defenses in accordance with the proviso to the next preceding sentence (it being understood, however, that the indemnifying party shall not be liable for the expenses of more than one separate counsel for each of, and approved by, the Senior Underwriter, the PO Underwriter, the Subordinate Underwriter or the Purchaser, as applicable, in the case of paragraph (a) of this Section 3.1, representing the related indemnified parties under such paragraph (a) who are parties to such action), (ii) the indemnifying party shall not have employed

-13-

counsel satisfactory to the indemnified party to represent the indemnified party within a reasonable time after notice of commencement of the action or (iii) the indemnifying party has authorized the employment of counsel for the indemnified party at the expense of the indemnifying party; and except that, if clause (i) or (iii) is applicable, such liability shall only be in respect of the counsel referred to in such clause (i) or (iii).  No indemnifying party shall, without the consent of the indemnified party, effect any settlement of any pending or threatened proceeding in respect of which any indemnified party is or could have been a party and indemnity could have been sought hereunder by such indemnified party, unless such settlement includes an unconditional release of such indemnified party from all liability on claims that are the subject matter of such proceeding.

    3.2    <u>Contribution</u>.

        (a)    If the indemnification provided for in Section 3.1(a)-(b) is unavailable or insufficient to hold harmless an indemnified party under Section 3.1(a)-(b), then each indemnifying party shall contribute to the amount paid or payable by such indemnified party as a result of the losses, claims, damages or liabilities referred to in Section 3.1(a) or (b) above, as applicable (i) in such proportion as is appropriate to reflect the relative benefits received by IndyMac MBS on the one hand and the Broker-Dealers on the other from the offering of the Offered Certificates or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of IndyMac MBS on the one hand and the Broker-Dealers on the other in connection with the statements or omissions or alleged statements or alleged omissions which resulted in such losses, claims, damages or liabilities as well as any other relevant equitable considerations.  The relative benefits received by IndyMac MBS on the one hand and the Broker-Dealers on the other shall be in such proportion so that the Broker-Dealers are responsible for an amount equal to the sum of the Senior Spread, the PO Spread, the Subordinate Spread and the Purchase Spread and IndyMac MBS is responsible for the balance.  The relative benefits received by the Senior Underwriter, the PO Underwriter, the Subordinate Underwriter and the Purchaser shall be the Senior Spread, in the case of the Senior Underwriter, the PO Spread, in the case of the PO Underwriter, the Subordinate Spread, in the case of the Subordinate Underwriter and the Purchase Spread, in the case of the Purchaser.  The relative fault shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omissions or alleged omission to state a material fact relates to information supplied by IndyMac MBS or by the Broker-Dealers and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such untrue statement or omission.  The amount paid by an indemnified party as a result of the losses, claims, damages or liabilities referred to in the first sentence of this Section 3.2 shall be deemed to include any legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any action or claim which is the subject of this Section 3.2.  A Broker-Dealer shall not be required to contribute any amount in excess of (x) the Senior Spread, in the case of the Senior Underwriter, the PO Spread, in the case of the PO Underwriter, the Subordinate Spread, in the case of the Subordinate Underwriter, or the Purchase Spread, in the case of the Purchaser, over (y) the amount of any damages which the applicable Broker-Dealer has otherwise been required to pay by reason of such untrue or alleged untrue statement or omission or alleged omission.  The obligation of any Broker-Dealer to contribute

-14-

under this Section 3.2 is several in proportion to the Senior Spread, the PO Spread, the Subordinate Spread and the Purchase Spread, respectively. No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

(b)    If the indemnification provided for in Section 3.1(c) or (d), as applicable is unavailable or insufficient to hold harmless an indemnified party under Section 3.1(c) or (d), as applicable, then the applicable Underwriter shall contribute to the amount paid or payable by IndyMac MBS as a result of the losses, claims, damages or liabilities referred to in Section 3.1(c) or (d), as applicable above (i) in such proportion as is appropriate to reflect the relative benefits received by IndyMac MBS on the one hand and such Underwriter on the other from the offering of the Offered Certificates or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) above but also the relative fault of IndyMac MBS on the one hand and the applicable Underwriter on the other in connection with the statements or omissions or alleged statements or alleged omissions which resulted in such losses, claims, damages or liabilities as well as any other relevant equitable considerations. An Underwriter shall not be required to contribute any amount in excess of (x) the Senior Spread, the Mezzanine Spread or the PO Spread, as applicable, over (y) the amount of any damages which the applicable Underwriter has otherwise been required to pay by reason of such untrue or alleged untrue statement or omission or alleged omission.

3.3     Benefits.

The obligations of IndyMac MBS under this Article III shall be in addition to any liability which IndyMac MBS may otherwise have and shall extend, upon the same terms and conditions, to each person, if any, who controls a Broker-Dealer within the meaning of the Act; and the obligations of each Broker-Dealer under this Article III shall be in addition to any liability which such Broker-Dealer may otherwise have and shall have extended upon the same terms and conditions, to the officers of IndyMac MBS who signed the Registration Statement or any amendment thereof, to its directors, and to each person who controls IndyMac MBS within the meaning of either the Act or the Exchange Act.

3.4.    Seller Obligation.

The Seller agrees with each Broker-Dealer, for the sole and exclusive benefit of such Broker-Dealer and each person who controls a Broker-Dealer within the meaning of either the Act or the Exchange Act and not for the benefit of any assignee thereof or any other person or persons dealing with such Broker-Dealer, to indemnify and hold harmless each Broker-Dealer and each person who controls a Broker-Dealer within the meaning of either the Act or the Exchange Act against any failure by IndyMac MBS to perform any of its obligations under this Agreement, the Underwriting Agreement or the Purchase Agreement. The Seller agrees that there are no conditions precedent to the obligations of the Seller hereunder other than written

-15-

demand to IndyMac MBS to perform its obligations under this Agreement, the Underwriting Agreement or the Purchase Agreement.

## ARTICLE IV

### Expenses

4.1   Other Expenses.

Any costs and expenses incurred in connection with the qualification of any of the Offered Certificates under the "blue sky" or securities laws of any state shall be paid by the Broker-Dealer requesting such action. Unless otherwise agreed to among the Broker-Dealers, any advertising or "tombstone" expenses shall be paid by the Broker-Dealer incurring the same. Each Broker-Dealer shall be responsible for all other costs and expenses incurred by it in connection with the purchase and sale of the Offered Certificates.

4.2   OID Calculations.

If a Broker-Dealer fails to provide IndyMac MBS with original issue discount ("OID") calculations within five business days after the Closing Date for any Certificates purchased by such Broker-Dealer, such Broker-Dealer agrees to reimburse the issuing entity for any penalties actually imposed on the issuing entity resulting from not having the OID information or for having such information late.

## ARTICLE V

### General

5.1   Survival.

This Agreement and the obligations of the parties hereunder shall survive the purchase and sale of the Offered Certificates and any termination of the Underwriting Agreement and/or the Purchase Agreement.

5.2   Successors.

This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers, directors and controlling persons referred to in

106610v.3

Article III hereof and their respective successors and assigns, and no other person will have any right or obligation hereunder.

     5.3    <u>Applicable Law</u>.

     This Agreement will be governed by and construed in accordance with the laws of the State of New York, disregarding principles of conflict of laws.

     5.4    <u>Miscellaneous</u>.

     Neither this Agreement nor any term hereof may be changed, waived, discharged or terminated except by a writing signed by the party against whom enforcement of such change, waiver, discharge or termination is sought.  This Agreement may be signed in any number of counterparts, each of which shall be deemed an original, which taken together shall constitute one and the same instrument.

     5.5    <u>Notices</u>.

     All communications hereunder shall be in writing and effective only on receipt and, if sent to a Broker-Dealer, shall be delivered to the address specified on the signature page hereof; or if sent to IndyMac MBS, shall be delivered to 155 North Lake Avenue, Pasadena, CA 91101, attention of Secondary Marketing—Transaction Management.

*   *   *   *   *   *   *

106610v.3

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officers on the date first above written.

INDYMAC MBS, INC.

By: _____

Name:   Jill Jacobson
Title:   Vice President
Address:  155 North Lake Avenue
          Pasadena, California 91101

INDYMAC BANK, F.S.B.

By: _____

Name:   Jill Jacobson
Title:   Vice President
Address:  888 East Walnut Street
          Pasadena, California 91101-7211

CREDIT SUISSE SECURITIES (USA) LLC

By: _____

Name:
Title:
Address:  Eleven Madison Avenue
          New York, New York 10010

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized officers on the date first above written.

INDYMAC MBS, INC.

By: _____
      Name:
      Title:
      Address:  155 North Lake Avenue
               Pasadena, California 91101

INDYMAC BANK, F.S.B.

By: _____
      Name:
      Title:
      Address:  888 East Walnut Street
               Pasadena, California 91101-7211

CREDIT SUISSE SECURITIES (USA) LLC

By: _____
      Name:  KEVIN STEELE
      Title:  DIRECTOR
      Address:  Eleven Madison Avenue
               New York, New York 10010