GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ROBERT A. GOODIN, State Bar No. 061302
rgoodin@goodinmacbride.com
FRANCINE T. RADFORD, State Bar No. 168269
fradford@goodinmacbride.com
ANNE H. HARTMAN, State Bar No. 184556
ahartman@goodinmacbride.com
505 Sansome Street, Suite 900
San Francisco, California 94111
Telephone: (415) 392-7900
Facsimile: (415) 398-4321

GRAIS & ELLSWORTH LLP
DAVID J. GRAIS
dgrais@graisellsworth.com
KATHRYN C. ELLSWORTH
kellsworth@graisellsworth.com
OWEN L. CYRULNIK
ocyrulnik@graisellsworth.com
LEANNE M. WILSON
lwilson@graisellsworth.com
40 East 52nd Street
New York, New York 10022
Telephone: (212) 755-3550
Facsimile: (212) 755-0052

Attorneys for Plaintiff
Federal Home Loan Bank of San Francisco

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FEDERAL HOME LOAN BANK OF SAN FRANCISCO,

Plaintiff,

v.

DEUTSCHE BANK SECURITIES, INC., et al.,

Defendants.

No. CV-10-3039 SC &
No. CV-10-3045 SC

**PLAINTIFF'S CORRECTED OMNIBUS REPLY IN SUPPORT OF MOTION TO REMAND**

Date: November 5, 2010
Time: 10:00 a.m.
Dept. Courtroom 1, 17th Floor

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page2 of 24

FEDERAL HOME LOAN BANK OF SAN FRANCISCO,

Plaintiff,

v.

CREDIT SUISSE SECURITIES (USA) LLC, et al.,

Defendants.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND
-2-
(Nos. CV-10-3039 SC & CV-10-3045 SC)

# TABLE OF CONTENTS

**Page**

ARGUMENT ..... 2

I. UNDER SECTION 22(A) OF THE SECURITIES ACT OF 1933, REMOVAL OF THIS ACTION WAS IMPROPER. ..... 2

A. The Bank's Claims Under the 1933 Act are not Time Barred. ..... 3

B. In the Ninth Circuit, Section 22(a) Bars Related-to-Bankruptcy Removal. ..... 5

II. THE BANK'S CHARTER PERMITS THE BANK TO "SUE AND BE SUED" ONLY IN COURTS THAT HAVE A SEPARATE AND INDEPENDENT BASIS OF SUBJECT MATTER JURISDICTION. ..... 6

A. Defendants Mischaracterize Red Cross. "Federal Courts" is Not a Talisman. ..... 7

B. The Phrase "of Competent Jurisdiction" Is Not "Meaningless." ..... 8

C. Defendants Cite No Persuasive Contrary Authority. ..... 9

1. Pirelli is not persuasive authority. ..... 9

2. Neither the Bank nor this Court is bound by legal positions taken by another Federal Home Loan Bank. ..... 10

III. THE BANK IS NOT AN "AGENCY" OF THE UNITED STATES. ..... 11

A. Hoag is Better Precedent Than Fahey.. ..... 11

B. Under Hoag, the Bank Is Not an Agency of the United States. ..... 12

1. The Bank does not perform a "governmental function." (Factor 1) ..... 13

2. The Bank is privately managed and privately financed. (Factors 2 & 3) ..... 13

3. Only the Bank's shareholders own a proprietary interest in the Bank. (Factor 4) ..... 14

4. The Bank is neither referred to as an agency in other statutes nor treated as an arm of the government. (Factors 5 & 6) ..... 15

IV. THIS ACTION IS NOT "RELATED TO" A BANKRUPCTY PROCEEDING. ..... 15

A. The Credit Suisse Action Has No Bankrupt Originators. ..... 16

B. Most of the Trusts in the Deutsche Bank Action Have No Bankrupt Originator or Have a Bankrupt Originator of Only a Tiny Fraction of the Loans in the Trust. ..... 17

C. None of the Bank's Claims Will Directly Impact a Bankruptcy Proceeding. ..... 18

D. Even If These Two Actions Were "Related to" Bankruptcy Proceedings, The Court Should Remand Them on Equitable Grounds. ..... 19

CONCLUSION ..... 20

GOODIN, MACBRIDE, SQUERI, RITCHIE & DAY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

## CASES

*Acron Investments, Inc. v. Fed. Savings & Loan Ins. Corp.*, 363 F.2d 236 (8th Cir. 2005) ........ 14

*American National Red Cross v. S.G.*, 505 U.S. 247 (1992) ........ 6, 7, 8, 9

*California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) ........ 6

*Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005) ........ 7, 8, 9

*Fahey v. O'Melveny & Myers*, 200 F.2d 420 (9th Cir. 1953) ........ 2, 11, 12

*Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No C10-0139 RSM, 2010 WL 3662345 (W.D. Wash. Sep. 1, 2010) ........ 10, 12, 13, 14, 16, 19, 20

*Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco*, 792 F.2d 1432 (9th Cir. 1986) ........ 13

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F. 3d 778 (9th Cir. 2001) ........ 17

*In re Hoag Ranches v. Stockton Production Credit Association*, 846 F.2d 1225 (9th Cir. 1988) ........ 2, 11, 12, 13, 14

*In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-01376 LHK, 2010 WL 3910131 (N.D. Cal. Oct. 5, 2010) ........ 4, 5

*Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, (9th Cir. 2008) ........ 5, 6

*Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 (2010) ........ 3

*Parke v. Cardsystems Solutions, Inc.*, No. C 06-04857 WHA, 2006 WL 2917604, *4 (N.D. Cal. Oct. 11, 2006) ........ 19

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines*, 534 F.3d 779 (D.C. Cir. 2008) ........ 9, 10

*Scott v. Federal Reserve Bank of Kansas City*, 406 F.3d 532 (8th Cir. 2005) ........ 14

## STATUTES

12 U.S.C. § 1432(a) ........ 6, 7, 8, 9,10, 11

12 U.S.C. § 341 ........ 14

28 U.S.C. § 1331 ........ 8

28 U.S.C. § 1334(b) ........ 15, 16

28 U.S.C. § 1345 ........ 11, 12, 14

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page5 of 24

Defendants removed the Bank's two actions to this Court on three asserted bases of federal jurisdiction. Not one of these grounds is valid. Indeed, these same defendants[1] argued the same three grounds as a basis for removing substantially identical actions by the Federal Home Loan Bank of Seattle. The Honorable Ricardo S. Martinez of the United States District Court for the Western District of Washington rejected all three grounds and remanded the cases to state court on September 2, 2010. This Court should do the same.

Removal on all three grounds was improper in both of these actions because Section 22(a) of the 1933 Act prohibits removal of actions that plead claims under that Act.[2] Defendants concede that, if it applies, Section 22(a) would bar removal on two of the three grounds that they rely on (the Bank's charter and the Bank's supposed status as an agency of the federal government). Defendants argue that Section 22(a) does not apply because *all* of the Bank's claims under the 1933 Act are somehow time-barred as a matter of law. But that argument has been rejected by the United States Supreme Court and by this court in two recent decisions. (*See* Part I.A.) Defendants also argue that Section 22(a) does not apply to their third ground, related-to bankruptcy jurisdiction, but that argument too is belied by a recent decision of the Ninth Circuit. (*See* Part I.B.) Thus, defendants removed this case in violation of Section 22(a), and the Court should remand this action to state court for that reason alone.

Even if Section 22(a) did not prohibit the removal of this action, all three grounds are invalid for other reasons.

First, defendants in both the *Credit Suisse* and *Deutsche Bank* actions argue that the "sue and be sued" provision in the Bank's legislative charter creates federal subject matter jurisdiction of any action to which the Bank is a party. But defendants ignore the crucial additional language in the Bank's charter, which limits the "sue and be sued" provision to courts that are already "of

[1] *Federal Home Loan Bank of Seattle v. Barclays Capital*, C10-0139 RSM, 2010 WL 3662345 (W.D. Wash. Sept. 1, 2010). There are 18 defendants in the *Credit Suisse* action. With three exceptions, all of these defendants were also defendants in the *FHLB of Seattle* actions that Judge Martinez remanded. There are 17 defendants in the *Deutsche Bank* action. With three exceptions, all of these defendants were also defendants in the *FHLB of Seattle* actions.

[2] The recently remanded actions by the Federal Home Loan Bank of Seattle did not plead claims under the 1933 Act. The Bank's 1933 Act claims in these actions make defendants' arguments for federal jurisdiction even less persuasive than they were in the Seattle actions.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLAINTIFF'S CORRECTED REPLY IN SUPPORT OF MOTION TO REMAND** (Nos. CV-10-3039 SC & CV-10-3045 SC)

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page6 of 24

competent jurisdiction." The plain meaning of "of competent jurisdiction" requires a separate and independent basis of jurisdiction and, therefore, the Bank's charter does not create federal subject matter jurisdiction. (*See* Part II.)

Second, defendants in both cases argue that the Bank is subject to federal jurisdiction as an agency of the United States. For this argument, defendants rely solely on *Fahey v. O'Melveny & Myers*. The better precedent, however, is *In re Hoag Ranches v. Stockton Production Credit Association*. *Hoag* was decided more than 35 years after *Fahey*, addressed the precise issue that is before this Court, and means that the Bank is not an agency of the United States. (*See* Part III.)

Finally, defendants' third purported ground for removal is that this Court has "related to bankruptcy" jurisdiction because defendants may have the right to sue bankrupt originators of mortgage loans for indemnity. This argument is invalid in both of the Bank's actions, but for different reasons. In *Credit Suisse* there simply are no bankrupt originators. Defendants point to six out of 78 trusts that purportedly include a tiny fraction of loans originated by now-bankrupt originators, but those loans are expressly excluded from the Bank's action. (*See* Part IV.A.) In *Deutsche Bank*, there are bankrupt originators, but still no related-to bankruptcy jurisdiction. (*See* Part IV.B.) And even if the Court finds that it has related-to bankruptcy jurisdiction, it should remand the action on equitable grounds. (*See* Part IV.C.)

Having no subject matter jurisdiction, the Court should remand both cases to state court.

## ARGUMENT

Defendants do not dispute that they, as the parties invoking federal jurisdiction, bear the burden of proving that federal jurisdiction exists; that the Court must begin with a "strong presumption against removal"; and that "any doubt about the right of removal is resolved in favor of remand." (*Credit Suisse* Opening Br. 22.) Defendants have failed to carry their burden on any of their three asserted bases of federal jurisdiction.

## I. UNDER SECTION 22(A) OF THE SECURITIES ACT OF 1933, REMOVAL OF THIS ACTION WAS IMPROPER.

Defendants do not dispute that if Section 22(a) applies, then it prohibits removal based on the Bank's charter or the Bank's supposed status as an agency of the federal government. Instead,

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND**

-2-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

defendants argue that Section 22(a) does not apply to these actions because *all* of "FHLB SF's '33 Act claims are time-barred on their face." (Omnibus Opp. Br. 26.) Defendants also argue that Section 22(a) does not apply to related-to-bankruptcy removal. Both arguments are wrong.

**A. The Bank's Claims Under the 1933 Act are not Time Barred.**

Section 13 of the 1933 Act provides that claims under the Act are subject to a one-year statute of limitations, which runs from discovery of untrue or misleading statements, and a three-year absolute statute of repose.

Defendants argued in their notices of removal that *certain* of the Bank's claims under the 1933 Act were time-barred by the three-year statute of repose. (*See, e.g.*, J.P. Morgan Joinder in Notice of Removal ¶ 4.) Realizing that Section 22(a) still would prohibit removal based on the Bank's other 1933 Act claims,[3] defendants now argue that *all* of the Bank's claims under the 1933 Act are barred by the one-year statute of limitations. This desperate argument fails for at least two reasons. Defendants ignore recent decisions by the United States Supreme Court and two judges of this Court that demonstrate that the statute of limitations has not run on the Bank's 1933 Act claims.

*First*, defendants do not mention the Supreme Court's recent decision in *Merck & Co., Inc. v. Reynolds*, 130 S.Ct. 1784 (2010). The Supreme Court rejected the doctrine of "inquiry notice," the rule that the statute of limitations on a securities claim may begin to run when the plaintiff has reason to begin investigating a potential claim. The Supreme Court held that the statute of limitations for a securities claim begins to run only when "(1) the plaintiff did in fact

[3] Defendants argue in purely conclusory fashion that "in the '3039 Action, FHLB SF has not brought any '33 Act claims against the Removing Defendant, UBS, so section 22(a) does not bar removal of that Action." (Omnibus Opp. Br. 26.) Defendants do not explain why it should matter whether the 1933 Act claims are pleaded against the removing defendant or any other defendant. And defendants cite only one case to support this cryptic argument, but the case proves exactly the opposite. In *Murphy v. Kodz*, 351 F.2d 163, 167 (9th Cir. 1965), one defendant removed a case to federal court on the basis of his status as a federal law enforcement officer. The court held that the entire case (including claims against other, non-law-enforcement defendants) was properly removed and subject to federal jurisdiction even after the federal law enforcement officer was later dismissed. *Id.* That supports the Bank's argument that each action should be treated as a single unit for purposes of determining jurisdiction. So long as there is one claim under the 1933 Act in each action, the entire action is non-removable under section 22(a).

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

discover, or (2) when a reasonably diligent plaintiff would have discovered '*the facts constituting the violation*.'" *Id.* at 1789 (emphasis added) (quotation marks and alterations omitted).

In these actions, the Bank alleges that defendants sold the Bank certificates in residential mortgage-backed securitizations based on untrue and misleading statements. Those untrue or misleading statements were on four subjects: (i) how much equity borrowers had in their homes (that is, the loan-to-value ratios of the mortgages); (ii) how many of the borrowers actually lived in the mortgaged properties; (iii) whether the lenders followed their own underwriting standards in making the loans; and (iv) the triple-A ratings of the certificates that the Bank purchased. The "facts constituting the violation" are the detailed data, presented in the Schedules to the Amended Complaints, that show, for each trust, the number of loans in each trust that were the subject of each of these untrue and misleading statements. This data was not available to any potential plaintiff until the beginning of 2010. Defendants may wish to argue, as a matter of *fact*, that reasonable investors could have had access to this information earlier. But that is not a question that a court can decide as a matter of law, and certainly not on a page-and-a-half of briefing on a motion to remand.

*Second*, defendants also ignore two recent decisions of this Court. In *In re Wells Fargo Mortgage-Backed Certificates Litigation*, Judge Illston held that the statute of limitations on a claim under the 1933 Act based on "investment grade" certificates, that is, certificates that were rated "A" or higher by national rating agencies, does not begin to run until the certificates are downgraded to below investment grade. No. C 09-01376 SI, 2010 WL 1661534, at *7 (N.D. Cal. April 22, 2010). Every one of the certificates on which the Bank is suing was still rated above investment grade by at least one national rating agency less than one year before the Bank's actions were filed. Moreover, on March 15, 2010, the date on which the Bank filed its two lawsuits, at least 12 of the Bank's certificates in the *Credit Suisse* action and one certificate in the *Deutsche Bank* action still had not been downgraded below investment grade.[4] The Bank has

[4] CWALT 2005-11CB 2A1; CWALT 2005-7CB 1A1; CWALT 2005-1CB 1A1; CWALT 2005-1CB 1A2; CWALT 2005-46CB; CWALT 2005-3CB 1A1; CWALT 2005-3CB 1A10; CWALT 2005-3CB 1A9; CWALT 2005-86CB A6; CWALT 2005-86CB A8; CWALT 2005-47CB A10; CWALT 2005-47CB A8; and INDX 2006-R1 A1.

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page9 of 24

pleaded claims under the 1933 Act on each of those certificates. Judge Illston's holding was reaffirmed by Judge Koh, who is now overseeing the *In re Wells Fargo* litigation. *In re Wells Fargo Mortgage-Backed Certificates Litig.*, No. 09-cv-01376 LHK, 2010 WL 3910131 (N.D. Cal. Oct. 5, 2010).[5] Thus, as a matter of law, the statute of limitations on the Bank's 1933 Act claims has not yet run.[6]

**B. In the Ninth Circuit, Section 22(a) Bars Related-to-Bankruptcy Removal.**

Defendants argue that Section 22(a) "does not prevent removal . . . based on 'related to' bankruptcy jurisdiction under section 1452." Defendants are relying on outdated authority from another Circuit, which has been superseded by the Ninth Circuit's recent decision in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008).

The Ninth Circuit held that the anti-removal provision of the 1933 Act prohibits removal based on the Class Action Fairness Act because the 1933 Act "applies to the *narrow subject* of securities cases" and "more precisely applies only to claims arising under the Securities Act of 1933," whereas the removal provision of CAFA "applies to a 'generalized spectrum' of class

[5] Both Judges Illston and Koh also held that, because the actions were filed less than a year from the date on which the certificates were downgraded below investment grade, all other competing contentions regarding when the Plaintiffs were or should have been on notice of their claims "present a factual dispute that must be resolved by the trier of fact." *In re Wells Fargo*, 2010 WL 1661534, at *7.

[6] Even if defendants were correct (and they are not) that the statute of limitations has run on *all* of the Bank's claims under the 1933 Act, still many of the Bank's claims were tolled based on the pendency of class actions. (*See Credit Suisse* Am. Complaint ¶ 43; *Deutsche Bank* Am. Complaint ¶ 42.) Defendants argue that the Bank is not entitled to *American Pipe* tolling because the securitizations that the Bank purchased have been dismissed from these class actions because no lead plaintiff in the class action owned bonds in those trusts. Defendants are wrong. *American Pipe* tolling begins the day the class action is filed and remains tolled until an order of dismissal is made, whether for lack or standing or otherwise. *See Bangert v. Narmco Materials, Inc.*, 163 Cal. App. 3d 207, 212-13 (Cal. App. 1984) (filing of complaint tolled statute of limitations for all members of the purported class until the class action's claims were dismissed without leave to amend); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 456 (S.D.N.Y. 2005) (same). The purpose of *American Pipe* tolling is to prevent putative class members from being "induced to file protective motions to intervene or to join in the event that a class was later found unsuitable." *American Pipe*, 414 U.S. at 554. If defendants were correct, "potential class members would be induced to file protective actions to preserve their claims, thus depriving class actions of their ability to secure efficiency and economy of litigation" and defeating the purpose of *American Pipe. Hatfield v. Halifax PLC and HBOS PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009). Furthermore, even if dismissal for lack of standing is somehow unique in eliminating *American Pipe* tolling, in the *Credit Suisse* action, *Luther* still tolled the Bank's claims because it was dismissed on grounds other than standing. And in the *Deutsche Bank* action, *New Jersey Carpenters Health Fund* still tolls the Bank's claims because no motion to dismiss has yet even been decided in that case, so defendants' argument is premature and irrelevant.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND

-5-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

actions." *Id.* at 1034 (emphasis added.) Precisely the same reasoning applies here. The 1933 Act applies only to the same "narrow subject" of securities cases, but related-to bankruptcy jurisdiction applies to cases on virtually any subject matter. Under *Luther*, therefore, the anti-removal provision of the 1933 Act prohibits removal of an action as related-to a bankruptcy.

Defendants do not dispute the Bank's reading of *Luther*. Instead, defendants rely principally on the holding of the Second Circuit in *California Public Employees' Retirement System v. WorldCom, Inc.*, 368 F.3d 86, 99-100 (2d Cir. 2004). At bottom, however, the Second Circuit and the Ninth Circuit have a different test for determining whether one statute is more specific than, and thus takes precedence over, another.[7] This Court is bound to follow the more recent decision of the Ninth Circuit, and must, therefore, find that defendants' removal of the Bank's actions based on related-to bankruptcy jurisdiction was improper.

## II. THE BANK'S CHARTER PERMITS THE BANK TO "SUE AND BE SUED" ONLY IN COURTS THAT HAVE A SEPARATE AND INDEPENDENT BASIS OF SUBJECT MATTER JURISDICTION.

Defendants argue that this Court has jurisdiction under the Bank's charter, which provides that the Bank may "sue and be sued, [] complain and [] defend, *in any court of competent jurisdiction*, State or Federal." 12 U.S.C. § 1432(a) (emphasis added). Defendants do not argue that the plain language of section 1432(a) creates federal jurisdiction. Defendants argue instead that the Supreme Court's decision in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), compels this Court to decide that it has jurisdiction under section 1432(a). There, the Supreme Court held that the charter of the Red Cross creates federal subject matter jurisdiction by permitting that organization to "sue or be sued in any court . . . state or federal." *Id.* at 276 (internal quotations and citations omitted). Defendants argue that this Court must decide that the

[7] The Second Circuit in *Worldcom* held that the doctrine of specificity permits one statute to take precedence over a more general statute, only if the specific statute is a *subset* of the general. Thus, the Second Circuit reasoned that the 1933 Act is a subset of "federal question" jurisdiction, because *all* claims under the 1933 Act also, by definition, are federal questions. But the Second Circuit held that the 1933 Act is not more specific than related-to bankruptcy jurisdiction because there are 1933 Act claims that are not also related-to bankruptcy. *Id.* The Ninth Circuit rejected this reasoning (and thus implicitly rejected the Second Circuit's holding in *Worldcom*) when it decided *Luther* more than five years later. The Ninth Circuit held that the anti-removal provision of the 1933 Act is more specific than the removal provision of the Class Action Fairness Act. The Ninth Circuit reached that conclusion despite the fact that 1933 Act claims are *not* a subset of class actions that may be removed under CAFA.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Bank's charter does the same, even though section 1432(a) adds the crucial words "in any court of competent jurisdiction."

There are three reasons why *Red Cross* does not mean that the Bank's charter creates federal jurisdiction of these actions. First, *Red Cross* simply does not apply to charters that permit an organization to "sue and be sued" only in courts "of competent jurisdiction." Second, defendants ignore that the Ninth Circuit held in *Doe v. Man* 415 F.3d 1038, 1045 (9th Cir. 2005) that a statute that refers to "courts of competent jurisdiction" does not itself create subject matter jurisdiction.. And, third, the authorities that defendants cite for their strained interpretation of *Red Cross* are all unpersuasive.

**A. Defendants Mischaracterize *Red Cross*. "Federal Courts" is Not a Talisman.**

Defendants read *Red Cross* to dictate that the Bank's charter creates federal jurisdiction despite its express reservation that the Bank may "sue and be sued" only in "courts of competent jurisdiction." This reading is based on the false premise that in *Red Cross* the Supreme Court "announced" a "rule" that *every* federal charter that "specifically refers to the federal courts" *must* be read to create federal subject matter jurisdiction. (Omnibus Opp. Br. 19.) This "rule," defendants argue, requires this Court to decide that the Bank's charter creates federal jurisdiction because the charter "specifically refers" to "courts state and *federal*."

The Supreme Court did not state such an absurd rule. Rather, the Supreme Court held that "a congressional charter's 'sue and be sued' provision *may* be read to confer federal court jurisdiction *if, but only if,* it specifically mentions the federal courts." *Red Cross*, 505 U.S. at 247 (emphasis added). There is only one reasonable way to read that sentence: specific mention of the federal courts is a necessary, *but not a sufficient*, condition for a congressional charter to create federal jurisdiction. Had the Supreme Court intended to state a *sufficient* condition (as defendants appear to be suggesting), that is, a rule that every charter that refers to federal courts automatically creates federal jurisdiction, then the Supreme Court would have used "must" rather than "may." The Supreme Court would have written that "a congressional charter's 'sue and be sued' provision *must* be read to confer federal court jurisdiction *if, but only if,* it specifically mentions the federal courts."

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page12 of 24

The Supreme Court chose "may" rather than "must" because it was not trying to "announce" a broad rule or any "rule" at all. As the Bank explained in its opening brief (*Credit Suisse* Opening Br. 11), *Red Cross* is the latest in a two-century-long line of Supreme Court cases that have interpreted *ambiguous* "sue and be sued" provisions to determine whether they create federal subject matter jurisdiction. None of those decisions applies to these actions, however, because the "sue and be sued" provision in the Bank's charter is *un*ambiguous. By expressly permitting the Bank to "sue and be sued" *only* in courts already of "competent jurisdiction," Congress made it clear that section 1432(a) itself does not create subject matter jurisdiction.

Nothing in *Red Cross* suggests that, if the Supreme Court had considered the charter of the Bank rather than the charter of the Red Cross, it would have ignored the words "of competent jurisdiction" in the Bank's charter simply because that charter specifically refers to federal courts. Thus, *Red Cross*, which is the sole basis of defendants' argument, does not apply.

**B. The Phrase "of Competent Jurisdiction" Is Not "Meaningless."**

Defendants argue that the words "of competent jurisdiction" are meaningless. According to defendants, "[t]here is no *meaningful difference* between the Red Cross and Federal Home Loan Bank charters. . . . Adding the word "competent" to the Red Cross's charter would therefore not have changed the outcome of *Red Cross*." (Omnibus Opp. Br. 17 (emphasis added).) The Ninth Circuit rejected that argument in *Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005). (*See Credit Suisse* Opening Br. 7-8.) The Ninth Circuit held that, when a federal statute provides that an action may be brought in a "court of competent jurisdiction," a court "must determine whether the federal district court had *jurisdiction from an independent source*, 28 U.S.C. § 1331, making it a 'court of competent jurisdiction.'" *Doe*, 415 F.3d at 1045 (emphasis added).

Defendants argue that *Doe v. Mann* considered a statute that was not precisely the same as the Bank's charter. (Omnibus Opp. Br. 19.) Defendants are missing the point. *Doe v. Mann* provides authoritative guidance on how to interpret the phrase "court of competent jurisdiction," which is identical in both the Bank's charter and the statute considered in *Doe v. Mann*.

Thus, *Doe v. Mann* directly contradicts defendants' argument that the additional phrase "court of competent jurisdiction" is not a material difference between the Bank's charter and the

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND

-8-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

charter of the Red Cross. Under *Doe v. Mann*, a court is "of competent jurisdiction" only if it has an independent basis of subject matter jurisdiction.

**C. Defendants Cite No Persuasive Contrary Authority.**

Defendants rely on the majority opinion of the D.C. Circuit in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines*, 534 F.3d 779 (D.C. Cir. 2008), and on the fact that a different bank, the Federal Home Loan Bank of Des Moines, has twice removed actions to federal court based on section 1432(a). Neither point is persuasive.

**1. *Pirelli* is not persuasive authority.**

The majority opinion of the D.C. Circuit in *Pirelli* is one of six opinions that discuss the phrase "court of competent jurisdiction" in a "sue and be sued" provision of a legislative charter. The other five are Judge Brown's concurring opinion in *Pirelli* and the opinions of four district courts, two decided before *Pirelli* and two decided after *Pirelli*. All five of these other opinions concluded that the phrase "court of competent jurisdiction" means that Congress did not intend the charter itself to create federal jurisdiction, and, therefore, that *Red Cross* does not apply.

Most persuasive is the decision of Judge Martinez of the Western District of Washington in the substantially similar actions by the Federal Home Loan Bank of Seattle. Judge Martinez considered precisely the same arguments that defendants have made to this Court. Indeed, the briefs that defendants submitted to Judge Martinez on this question are virtually identical to the briefs that defendants submitted to this Court. Judge Martinez held unequivocally that the majority opinion in *Pirelli* was wrongly decided.

> The *Pirelli* majority construed *Red Cross* expansively, and Defendants invoke *Pirelli* to argue that the word, "federal," appearing in a congressional charter, is a "talisman" whose power to create federal jurisdiction cannot be negated by the addition of a "competent jurisdiction" clause. In opposition, Plaintiff argues that a "competent jurisdiction" clause would be superfluous if it did not necessitate a separate jurisdictional grant. Three district court decisions support this position, one of which succeeded and declined to follow *Pirelli*. *Because it agrees with the reasoning in all these district court decisions, as well as with the Pirelli concurrence, this Court finds that a "competent jurisdiction" clause necessitates a supplementary grant of federal jurisdiction.*

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page14 of 24

*Federal Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No C10-0139 RSM, 2010 WL 3662345, at *1-2 (W.D. Wash. Sep. 1, 2010) (emphasis added) (citations omitted).

In all, with the sole exception of the majority opinion in *Pirelli*, every court that actually considered the "competent jurisdiction" language in the Bank's charter held that it cannot alone confer federal jurisdiction. The Bank respectfully submits that this Court should do the same.

**2. Neither the Bank nor this Court is bound by legal positions taken by another Federal Home Loan Bank.**

Defendants note that the Federal Home Loan Bank of Des Moines has twice removed actions to federal court based in part on section 1432(a). According to defendants, "[i]t would be unfair to allow [the Federal Home Loans Banks] to consent to federal jurisdiction when it suits them and deny federal jurisdiction when it is inconvenient." (Omnibus Opp. Br. 20.) But defendants never explain *why* each separate and independent Federal Home Loan Bank should not be entitled to its own litigation strategy. The positions taken by the Des Moines Bank do not preclude the San Francisco Bank from moving to remand these actions, and certainly do not require this Court to exercise subject matter jurisdiction when it has none.

The Federal Home Loan Banks are separate commercial entities. They have separate shareholders, separate boards of directors, separate managements, and separate members. Each bank maintains its own unique set of products and its own budget, and each makes its own decisions about litigation strategy. The fact that the banks were created pursuant to the same statutory authority does not mean that each must be bound by the legal strategies of the others.

The San Francisco Bank was not involved in either of the actions that the Des Moines Bank removed. There is no evidence that the San Francisco Bank was even aware that the Des Moines Bank had asserted section 1432(a) as a basis of jurisdiction and certainly no reason to believe that the San Francisco Bank had an opportunity to protect its interests in those actions. Under these circumstances, there is no law that forces the San Francisco Bank to conform to a litigation position that was adopted earlier by the Des Moines Bank.

In any event, this is a motion to remand based on lack of subject matter jurisdiction. Even if the Bank had not moved to remand, the Court still would be obligated to determine for itself

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND

-10-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

whether it has subject matter jurisdiction, as defendants themselves have noted (Omnibus Opp. Br. 19). Certainly positions taken by a bank that is not a party to these actions should not be a factor in this Court's analysis of its own subject matter jurisdiction under section 1432(a).

## III. THE BANK IS NOT AN "AGENCY" OF THE UNITED STATES.

### A. *Hoag* is Better Precedent Than *Fahey*..

The crux of the dispute on this point is which Ninth Circuit precedent this Court should follow. Defendants argue that the Court is bound by *Fahey v. O'Melveny & Myers*, 200 F.2d 420, 446-47 (9th Cir. 1953). (Omnibus Opp. Br. 22.) The Bank argues that this Court should follow *In re Hoag Ranches v. Stockton Production Credit Association*, 846 F.2d 1225, 1227 (9th Cir. 1988), which decided the precise issue now before this Court more than 35 years after *Fahey*.

For three reasons, defendants are mistaken in guiding the Court to *Fahey*. They mischaracterize the Ninth Circuit's two decisions; they disregard the crucial difference between "agencies" and "instrumentalities" of the United States; and they ignore the fact that Congress fundamentally changed the structure and function of the Federal Home Loan Banks 30 years after *Fahey* was decided.

*First*, defendants leave the Court with the false impression that *Fahey* is binding authority regarding the meaning of "agency" under section 1345. (Omnibus Opp. Br. 24.) It is not. *Fahey* does not even mention section 1345. Defendants themselves acknowledge that the actual question before the court in *Fahey* was "whether the abolition of FHLB of Los Angeles constituted an illegal seizure of private property . . . ." (Omnibus Opp. Br. 24.) The court did not have to decide whether Federal Home Loan Banks were "agencies" within the meaning of section 1345.

In contrast, *Hoag* did focus on the definition of "agency" precisely in section 1345. The Ninth Circuit noted that "[t]he term 'agency' is not defined in the Federal Rules of Appellate Procedure, *but is defined in 28 U.S.C. § 451* . . . ." *Hoag*, 846 F.2d at 1227 (emphasis added). Section 451 defines the term "agency" for *all* sections of Title 28, including section 1345. Indeed, the Ninth Circuit in *Hoag* specifically noted that "[s]everal courts have applied § 451 to determine when a party is an agency . . . for the purpose of invoking jurisdiction under 28 U.S.C. § 1345." *Id.* at 1227. In the face of that language, it simply is not credible for defendants to argue

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page16 of 24

that *Fahey* is a more relevant precedent than *Hoag*, which construed the *precise* statute that is before the Court in these actions.

That is why Judge Martinez in the *FHLB of Seattle* cases expressly rejected *Fahey* as the appropriate precedent and relied instead on *Hoag.*

> [T]*he Fahey court never considered the Banks' agency status.* It merely determined that litigation between individual Banks was not a legitimate means by which to compel action by the FHLB Board. *Fahey* determined the Board's "agency" status for purposes of due process, but does not help this Court determine the status of individual FHLBs for jurisdiction. Instead of relying on *Fahey*, this Court applies the six-factor test for agency status established in *In re Hoag Ranches v. Stockton Production Credit Association.*

2010 WL 3662345, at *2 (emphasis added) (citation omitted).

*Second*, there is a crucial difference between "agencies" and "instrumentalities" of the United States. Section 1345 grants jurisdiction of actions involving agencies, but not instrumentalities. *Fahey* provides no guidance on whether the Bank is an agency or an instrumentality; the court used the terms interchangeably. *Fahey*, therefore, cannot possibly settle the matter for exactly the reason that the Ninth Circuit explained in *Hoag.* 846 F.2d 1225, 1227 (9th Cir. 1988) ("*Many financial institutions are federally chartered and regulated and are considered federal instrumentalities, without attaining the status of government agencies* within the meaning of federal procedural rules.") (emphasis added).

*Third*, even if *Fahey* had held that the Bank is an agency of the United States for purposes of section 1345 (which it did not), there have since been fundamental changes to the structure and governance of the Federal Home Loan Banks that *Fahey* could not possibly have considered. Defendants' argument that features of the FHLB system "remain unchanged today" ignores the past 25 years of legislation and regulation. (Omnibus Opp. Br. at 21). *Fahey* is inapplicable to determining whether the present-day Federal Home Loan Banks are agencies of the United States.

**B. Under *Hoag,* the Bank Is Not an Agency of the United States.**

Defendants do not dispute that the Bank has no rule-making or regulatory authority, that its operations are privately managed, and that all of its capital is provided solely by private financial institutions. These undisputed facts refute any argument that the Bank is an agency of the federal government.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND

-12-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

**1. The Bank does not perform a "governmental function." (Factor 1)**

It is undisputed that the Bank has no rule-making or regulatory authority. The Ninth Circuit specifically noted in *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco* 792 F.2d 1432, 1435 that the Bank's business – lending money to financial institutions to enable them to make mortgage loans – is not a traditional "sovereign activity" and that "[i]t therefore appears questionable whether the challenged Bank actions may be deemed governmental."; *see also FHLB of Seattle*, 2010 WL 3662345, at *3 ("The cases from which the *Hoag* court derives its first factor [. . .] suggest that a federally chartered entity may need to have 'rule-making or regulatory authority' to be considered to perform a government function.").

Defendants argue that the recent decision in *FHLB of Seattle* "misapplies *Hoag*." (Omnibus Opp. Br. 24), but Defendants real complaint is that *FHLB of Seattle*, in applying *Hoag*, did not consider *Fahey* to be persuasive precedent because *Fahey* was decided before Congress fundamentally altered the role of the Federal Home Loan Banks.

**2. The Bank is privately managed and privately financed. (Factors 2 & 3)**

Defendants concede that under *Hoag* agency status turns in part "on the government's involvement in its management." (Omnibus Opp. Br. 22.) The role of government in the management of the Bank has been drastically reduced in recent years, and government plays no role in the financing of its operations. (*Credit Suisse* Opening Br. 13-14.) Defendants do not dispute that the Bank's Board of Directors (not the government) has the exclusive authority to manage the Bank's operations. Nor do defendants dispute that the Bank receives no tax dollars and that the Bank's operations are financed entirely by its members. (*Id*. at 13.) Defendants argue instead that the Bank is subject to federal regulation and that the tax-free treatment of the Bank's debt is tantamount to a federal subsidy. (Omnibus Opp. Br. 23-24.) Neither point is persuasive. Many organizations are subject to federal regulation but are not agencies of the United States. *E.g., Fidelity Fin.*, 792 F.2d at 1435 ("The fact that a business is subject to extensive regulation does not alone render its actions governmental."). For example, banks that take consumer deposits are subject to regulation by the FDIC; indeed, the FDIC has the power to take over the

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page18 of 24

operations of any bank that it insures. Obviously, however, not every FDIC-insured bank is an agency of the United States. Similarly, although the tax-free treatment of debt may be a form of subsidy, the same is true of every municipality in the United States that issues tax-free bonds, yet no one would argue that every such municipality is an agency of the United States.

**3. Only the Bank's shareholders own a proprietary interest in the Bank. (Factor 4)**

Defendants do not dispute that the Bank is capitalized only by its members. (*Deutsche Bank* Opening Br. 17.) Defendants argue that the federal government's status as a stockholder in a corporation does not determine whether the government has a proprietary interest in that corporation. (Omnibus Opp. Br. 22-23.) Defendants' sole support for that argument, however, is a case in which the organization had no stock at all, not one in which all of the stock was privately owned. *See Acron Investments, Inc. v. Fed. Savings & Loan Ins. Corp.*, 363 F.2d 236, 240 (9th Cir. 1966) (FSLIC's stock had been retired).

Defendants also argue that "Congress retains the unrestricted authority to reorganize or eliminate FHLB SF without recourse by FHLB SF or its member organizations." (Omnibus Opp. Br. 23.) That may be true, but it does not prove that the Bank's shareholders do not own a proprietary interest in the Bank. Moreover, Congress has the same power to eliminate any Federal Reserve Bank, *see* 12 U.S.C. § 341, but the Eighth Circuit held expressly in *Scott v. Federal Reserve Bank of Kansas City*, 406 F.3d 532, 538 (8th Cir. 2005), that the Federal Reserve Banks are not government agencies under *Hoag*.

Notably, Judge Martinez held in *FHLB of Seattle* that "[i]n cases construing sections 1345 and 451, *Hoag*'s fourth factor is paramount, since these cases necessarily consider whether the government has a 'proprietary' and non-'incidental' interest in the plaintiff organization." 2010 WL 3662345, at *4. Judge Martinez found a clear pattern in the cases interpreting Section 1345. "[T]hose [cases] that hold quasi-governmental corporations to be 'agencies' for Section 1345's purposes involve single administrative entities, while those that deny jurisdiction involve entities whose corporate structures resemble the FHLBs'." *Id.*

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND
-14-
(Nos. CV-10-3039 SC & CV-10-3045 SC)

**4. The Bank is neither referred to as an agency in other statutes nor treated as an arm of the government. (Factors 5 & 6)**

Defendants do not name a single example of a statute in which the Bank is referred to as an agency of the United States. (Omnibus Opp. Br. 24.) Defendants point instead to a single federal *regulation* that, if read in a particular sequence, seems to imply that the Bank is an agency because its bonds are eligible to be purchased by the Federal Reserve Banks. (Omnibus Opp. Br. 24 (citing 12 C.F.R. § 201.108(b)(2)).) The fact that defendants could find only passing reference to the Bank as an agency in a single federal regulation is itself evidence that the Bank simply is not considered an agency of the United States as defined by the Ninth Circuit in *Hoag*.[8]

## IV. THIS ACTION IS NOT "RELATED TO" A BANKRUPCTY PROCEEDING.

Defendants argue that the Bank's claims are "related to" bankruptcy cases and thus subject to federal jurisdiction pursuant to 28 U.S.C. § 1334(b). Defendants argue that, if they are found liable in the Bank's actions, they have contractual rights to indemnity from bankrupt originators of mortgage loans. This Court lacks related-to bankruptcy jurisdiction in both the *Credit Suisse* and *Deutsche Bank* actions. The *Credit Suisse* action has no bankrupt originators that could possibly be liable to indemnify defendants. The *Deutsche Bank* action includes trusts with purportedly bankrupt originators, but, for three reasons, still is not subject to related-to bankruptcy jurisdiction. First, most of purportedly bankruptcy-related trusts (more than 75% percent) had either IndyMac Bank, F.S.B. (which is not actually bankrupt) as the sole "bankrupt" originator or had bankrupt originators that were responsible for so few loans that they were not even disclosed in the prospectus supplement. Moreover, even those trusts that did have bankrupt originators of significant numbers of loans are not "related to" any bankruptcy proceedings

[8] Defendants also cite *Fidelity Financial Corporation v. Federal Home Loan Bank of San Francisco*, 589 F. Supp. 885 (N.D. Cal. 1983), which in ruling on the Bank's motion to dismiss held that the Bank was an agency under the Administrative Procedures Act. This decision, however, relied heavily on *Fahey*, and on the Bank's "rule-making" role. *Fidelity*, 589 F. Supp. at 895. Because of the drastic changes to the structure and function of the Bank after this case was decided, it is not persuasive authority for this Court. Moreover, contrary to Defendants' assertions (Omnibus Opp. Br. 22), the Ninth Circuit in *Fidelity* did not hold that the Bank was an agency of the United States. *See Fidelity*, 792 F.2d at 1435. The Ninth Circuit reviewed the district court's decision granting the Bank's summary judgment motion, in which the district court held the Bank's actions were *not* governmental in nature. But the Ninth Circuit did not reach the issue of whether the Bank's actions were governmental, because it decided the appeal on other grounds.

because they cannot have any direct effect on the bankruptcy proceedings of those originators. And, even if this Court could exercise jurisdiction under section 1334(b), it should nevertheless remand these cases on equitable grounds pursuant to 28 U.S.C. § 1452(b), just as Judge Martinez did based on virtually identical facts in the *FHLB of Seattle* actions.

### A. The *Credit Suisse* Action Has No Bankrupt Originators.

Defendants conflate the *Credit Suisse* and *Deutsche Bank* actions to leave the Court with the misimpression that both actions include loans from a substantial number of bankrupt originators. That is not so. In particular, defendants' joint opposition brief includes a five-page chart of bankrupt originators that wrongly attributes 11 trusts with bankrupt originators to the *Credit Suisse* action. In fact, only six trusts with bankrupt originators are in the *Credit Suisse* complaint; the rest are actually in the *Deutsche Bank* complaint but are incorrectly identified on defendants' chart.[9]

Even the six trusts with purportedly bankrupt originators that actually are in the *Credit Suisse* action cannot be a basis for related-to-bankruptcy jurisdiction. The loans that were originated by bankrupt originators make up only a small fraction of the loans in those six trusts, which, in turn, are a small fraction of the 78 trusts in the *Credit Suisse* complaint. In four of these trusts (DBALT 2005-5, DBALT 2007-2, BALTA 2004-12, and SAMI 2007-AR5), the percentage of loans originated by the bankrupt originators was so small that the originators were not even disclosed in the prospectus supplements for those trusts. In the fifth trust (MALT 2005-6), the allegedly bankrupt originator was IndyMac Bank, F.S.B., which is not even bankrupt. (*See* Point IV.B.) And in the sixth trust (DBALT 2005-6), the Bank expressly stated in its Amended Complaint that it makes no allegations with respect to loans from that originator.[10] (Amended

[9] After correcting several inaccuracies on the charts on pp. 3-7 of defendants' opposition brief, defendants appear to be arguing that six out of the 78 trusts in the *Credit Suisse* action have now-bankrupt originators. The first four, DBALT 2005-6, DBALT 2005-5, DBALT 2007-2, and MALT 2005-6, were identified in defendants' notices of removal. The fifth and sixth, BALTA 2004-12 and SAMI 2007-AR5, were added for the first time in defendants' opposition brief.

[10] Defendants misunderstand the Bank's argument with respect to DBALT 2005-6. The Bank does not simply "request that the Court ignore AHM-originated loans in DBALT 2005-6." (Omnibus Opp. Br. 12.) In fact, the Bank expressly stated in the Amended Complaint that it does not make any allegations about those loans.

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Complaint Sched. 15.) Any impact that these few loans could have on a bankruptcy proceeding is so attenuated that it cannot create related-to-bankruptcy jurisdiction. (*See* Part IV.C.) And even if there were jurisdiction, the equities would overwhelmingly support remand. (*See* Part IV.D.)

Moreover, for the avoidance of doubt, the Bank expressly represented in its opening brief that it will not present evidence in the *Credit Suisse* action that defendants made untrue or misleading statements about any of the loans from the now-bankrupt originators. Defendants argue that "[that] doesn't work," because "FHLB SF's attempt to re-characterize its pleading by stating in its moving brief that it will forego [sic] any claims relating to loans from bankrupt originators is not binding on FHLB-SF, let alone third parties." (Omnibus Opp. Br. 11-12.) Apparently the Bank and the defendants have different views of representations to a federal court. Moreover, defendants' purported concerns that the Bank could simply change its mind are fully resolved by the doctrine of judicial estoppel. This rule "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Casualty Co.*, 270 F. 3d 778, 782 (9th Cir. 2001). The Ninth Circuit applies judicial estoppel, in particular, "to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Id.* at 783. Thus, if the Court accepts the Bank's representation, the Bank will be bound by that representation.

### B. Most of the Trusts in the *Deutsche Bank* Action Have No Bankrupt Originator or Have a Bankrupt Originator of Only a Tiny Fraction of the Loans in the Trust.

In their notice of removal, defendants argued that 27 trusts in the *Deutsche Bank* complaint had a bankrupt originator. (*Deutsche Bank* Opening Br. 16.) Defendants now claim that 30 trusts have bankrupt originators. (Omnibus Opp. Br. 3-7). In four of those trusts, the bankrupt originators were not even disclosed in the prospectus supplements because they originated so few loans. And IndyMac Bank, F.S.B. (which is not bankrupt) is the only so-called "bankrupt" originator that defendants rely on for 19 of those 30 trusts.

Indymac Bank, F.S.B. is the only bankrupt originator for more than half of the trusts in the *Deutsche Bank* action that defendants claim are related to a bankruptcy. As the Bank argued in its opening brief, loans originated by IndyMac Bank, F.S.B. cannot possibly be "related to" any

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case3:10-cv-03045-SC Document122 Filed10/20/10 Page22 of 24

bankruptcy because IndyMac Bank, F.S.B. is not bankrupt. IndyMac Bank, F.S.B., instead, has been placed into receivership under the supervision of the FDIC.

Defendants argue that "[t]he distinction FHLB SF seeks to draw between IndyMac Bank F.S.B. and its holding company, IndyMac Bancorp, which is in bankruptcy, is irrelevant." (Joint Opposition 11 n. 15.) That distinction certainly is not "irrelevant," however, where (as here) there is no possible way that the indemnification obligations of the subsidiary could possibly affect its bankrupt parent. (*Deutsche Bank* Opening Br. 17-18.) Defendants do not dispute that the FDIC announced publicly that the "amount realized from the resolution of IndyMac Federal is insufficient to pay all of its liabilities, and therefore there will be no amount to pay to the IndyMac Bank receivership." (*Deutsche Bank* Opening Br. 17.) Defendants argue, however, that there is some possibility that IndyMac Bancorp could recover some assets from IndyMac Bank, F.S.B., because "the FDIC in its capacity as receiver for IndyMac Bank, F.S.B. filed an action, and intervened as a plaintiff in an another action, against IndyMac's Directors and Officers to recover for injuries to IndyMac Bank, F.S.B." (Omnibus Opp. Br. 11 n. 15.) Defendants are mistaken. In December 2009, the FDIC stated that IndyMac Bank's liabilities exceeded its assets by almost $13 billion. (*See* http://www.fdic.gov/bank/individual/failed/indymacbalsheet.html.) The complaint that defendants are referring to, however, seeks damages of only $500 million. Thus, even if the FDIC recovers every dollar of its claimed damages, still it would have to recover an additional $12.5 billion before *any* funds could flow back to the bankrupt parent. Indeed, defendants do not claim to have filed *any* proofs of claim in the IndyMac Bancorp bankruptcy, even though they have filed proofs of claim in the bankruptcies of other originators.

**C. None of the Bank's Claims Will Directly Impact a Bankruptcy Proceeding.**

As the Bank argued in its opening brief, an action is related to a bankruptcy only if it could conceivably have a *direct effect* on the bankruptcy estate, without the need for a subsequent lawsuit. (*Deutsche Bank* Opening Br. 18-20.) Defendants argue that the indemnity agreements they rely on give rise to an unconditional obligation to indemnify. (Joint Opposition Br. 11.) Defendants are mistaken. None of the indemnity agreements identified by the defendants are automatic. Instead, in each case, defendants will be required to prove an additional condition

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFFS' CORRECTED REPLY IN SUPORT OF MOTION TO REMAND

-18-

(Nos. CV-10-3039 SC & CV-10-3045 SC)

before being entitled to indemnity. *See Deutsche Bank* Opening Br. 19-20; *see also* Rogovitz Decl., Ex. 1 § 7.04 (AHM agrees to indemnify Deutsche Bank provided the claims "result[] from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of [AHM's] representations and warranties"); Turner Decl., Ex. 4 at 2 (AHM agrees to indemnify RBS "insofar as such losses . . . arise out of. . . any untrue statement of any material fact . . . ").

**D. Even If These Two Actions Were "Related to" Bankruptcy Proceedings, The Court Should Remand Them on Equitable Grounds.**

Courts in the Ninth Circuit consider several factors in determining whether to remand on equitable grounds, including: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court. *See, e.g.*, *Parke v. Cardsystems Solutions, Inc.*, No. C 06-04857 WHA, 2006 WL 2917604, *4 (N.D. Cal. Oct. 11, 2006). Judge Martinez in *FHLB of Seattle* considered precisely the same factors and remanded the bankruptcy-related cases before him on equitable grounds. Judge Martinez held that "Section 1452(b) affords 'an unusually broad grant of authority.' Any one of the seven relevant factors may provide a sufficient basis for equitable remand." *FHLB of Seattle*, 2010 WL 3662345, at *7 (citation omitted).

As in *FHLB of Seattle*, in both of the Bank's actions, virtually all of these factors weigh in favor of equitable remand of these actions. (*See Deutsche Bank* Opening Br. 20-21.) *First,* in the *Credit Suisse* action, for the reasons discussed above, if the Court finds that there is related-to bankruptcy jurisdiction, it would have to do so based on a tiny fraction of the case that has a very attenuated relationship to a federal bankruptcy. The equities would overwhelmingly favor remand, particularly because, based on the Bank's representation to this Court, the effect of the action on the administration of a bankruptcy estate would be literally nil.

*Second,* in the *Deutsche Bank* action, the equities also strongly (if less dramatically) favor remand. As discussed in detail above, the vast majority of the trusts that defendants rely on for related-to bankruptcy jurisdiction would have virtually no effect on any bankrupt estate.

Defendants' indemnification rights, even if sufficient to satisfy the standard for related-to bankruptcy jurisdiction are quite remote. And the actions plead only state law claims and 1933 Act claims. (By virtue of Congress's express provision that 1933 Act claims are non-removable, they are the equivalent of state law claims for purposes of weighing the equities on a motion to remand.) And perhaps most important, assuming that the *Credit Suisse* complaint will proceed in state court, there would be substantial inefficiency and prejudice to the Bank if the Court were to keep jurisdiction over the *Deutsche Bank* action in federal court.

All of these reasons convinced Judge Martinez that equitable remand was required in the *FHLB of Seattle* cases. The Bank respectfully requests that this Court do the same.

**CONCLUSION**

For the reasons argued above and in the Bank's opening brief, defendants cannot prove that these actions are properly in federal court. The Court therefore should remand both actions to state court.

Dated: October 18, 2010

GOODIN, MACBRIDE, SQUERI,
DAY & LAMPREY, LLP

GRAIS & ELLSWORTH LLP

By: /s/ Robert A. Goodin
Robert A. Goodin

Attorneys for Plaintiff
Federal Home Loan Bank of San Francisco

3428/001/X123175.v1